IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 15-11-BU-DLC |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| JOSEPH BRENT LOFTIS, | |
| Defendant/Movant. | |

Defendant/Movant Joseph Brent Loftis has filed a motion under 28 U.S.C. §
2255. The Court concludes the motion should be denied.

Judgment was entered in this matter on September 27, 2019, after a prior
appeal of Loftis' sentence was remanded, and he was resentenced. The Ninth
Circuit Court of Appeals affirmed Loftis' conviction and new sentence on June 25,
2021. Loftis filed his § 2255 motion in this Court, followed by several supplements
and additional exhibits. By Order of September 28, 2022, this Court directed Loftis
to file an amended, comprehensive motion, including all of his claims and limited
to seventy pages. (Doc. 357.) Loftis filed an amended motion on November 10,
2022, that included 79 grounds for relief. (Doc. 360.) The Court has reviewed the
claims in Loftis' motion, the transcripts of all prior proceedings in this matter, and

1

the thousand-plus pages of exhibits that Loftis has filed in support. (Docs. 360-1, 360-2, 360-3, 360-4, and 360-5.)

## I. Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

Loftis was charged by Indictment on January 23, 2015, with five counts of wire fraud in violation of 18 U.S.C. § 1343 and five counts of money laundering in violation of 18 U.S.C. § 1957. (Doc. 1.) The Indictment alleges a scheme to defraud from 2008 through 2011 in the District of Montana and elsewhere, and

2

describes a scheme in which Loftis made various misrepresentations to investors regarding oil-producing properties. Loftis' original counsel filed a motion to dismiss the Second Superseding Indictment and a motion in limine. (Doc. 48.) On September 8, 2015, the Court denied the Motion to Dismiss but granted in part the Motion in Limine. (Doc. 52.). The Government appealed. (Doc. 54.)

On appeal, the Ninth Circuit affirmed the District Court's order, but held that the alleged fraud occurring outside Montana was not an "other" crime requiring admission under Fed. R. Evid. 404(b). *United States v. Loftis,* 843 F.3d 1173, 1176 (9th Cir. 2016). The Court of Appeals held that "the evidence of *uncharged transactions* is not evidence of 'other' crimes or acts under Rule 404(b), because it is evidence of part of the *crime charged* in the Indictment-the overall scheme to defraud." *Id*. (Emphasis in the original). The Order noted, however, that the evidence could still be excluded under Fed. R. Evid. 403.

After remand, Loftis moved for a change of counsel. (Doc. 68.) Loftis' new trial counsel filed several additional pretrial motions, including a motion in limine based on Federal Rule of Evidence 403, a motion to produce *Henthorn* materials, a motion to suppress, a motion to dismiss Counts IV-VI, a motion for the production of exculpatory evidence, and others. (Docs. 88, 125, 127, 129, 131, 133, 168, and 170.)

The Court granted and denied various motions. On March 6, 2018, the District Court reserved a decision on Loftis' motion in limine re: 403 until trial when it could more conclusively weigh the factors in Rule 403.  In the interim, the Court prohibited the Government from mentioning uncharged transactions in its opening statement and the Government's case in chief until the Court ruled. In the end, only three of the twelve witnesses Loftis sought to exclude by his Motion in Limine were permitted to testify. The testimony of nine witnesses was excluded.

Loftis went to trial on the Third Superseding Information, which limited the time frame to 2010 – 2011, and reduced the money laundering counts to two. (Doc. 98.) Loftis was convicted after an eight-day trial that began on March 19, 2018. His counsel filed post-trial motions for acquittal and for a new trial. (Docs. 210 and 212.) Both were denied.

Loftis was sentenced on August 10, 2018 to 97 months concurrent on all charges, with three years of supervised release. (Doc. 249.) His trial counsel timely appealed. (Doc. 251.) Shortly thereafter, his trial counsel withdrew before the Ninth Circuit, and appellate counsel was appointed. (Docs. 262 and 264.) Loftis' new counsel filed an appellant brief that did not challenge the conviction itself, but only the calculation of the sentence. (Doc. 13, *U.S. v. Loftis*, 9th Cir. Court of Appeals No. 18-30179, (March 1, 2019).) Before the Court of Appeals ruled on the matter, the parties stipulated to resentencing, and the case was remanded.

Upon remand, Loftis had yet another attorney appointed. (Doc. 291.) He was resentenced to a lower sentence of 82 months and again appealed. (Doc. 306.) His resentencing counsel then withdrew in the Court of Appeals. Loftis filed a pro se document at the time that stated that he and counsel were at an impasse and could not "find proper, legal, common ground." (Doc. 24, *United States v. Loftis*, No. 19-30228.) The Court of Appeals appointed new appellate counsel. (*Id.,* Doc. 32.) Loftis' new counsel eventually filed an *Anders* brief and a motion to withdraw, concluding that he could not find any grounds for appeal that did not conflict with his obligations to the court. (*Id.*, Docs. 42 and 48.)

In *Anders*, the United States Supreme Court concluded that when counsel on appeal finds the case to be wholly frivolous after conscientious examination, counsel should advise the court and move to withdraw. *Anders v. California*, 386 U.S. 738, 744 (1967). Loftis' counsel's *Anders* brief raised two areas of concern. One, counsel determined that appeal would be frivolous, because Loftis' prior appeal raised only sentencing as an issue, and anything not raised before was barred in a second appeal. And two, the substantive areas that Loftis encouraged him to raise were more properly raised in habeas corpus proceedings, including ineffective assistance of his prior counsel and government misconduct. (Doc. 42, *United States v. Loftis*, No. 19-30228.)

The U.S. did not file an opposing brief.

5

The Court of Appeals affirmed Loftis' conviction by memorandum after conducting its own review of the record. (*Id*., Doc. 60.) The Court of Appeals concluded that any of the substantive issues raised by Loftis that were not raised in his initial appeal (i.e., everything but his sentence) were barred for failure to raise them before. The Court of Appeals would not reach any issue related to ineffectiveness of counsel as beyond the record before it.

Loftis' substantive claims of error are therefore not reviewable in his § 2255 motion as never having been raised on appeal. However, to consider Loftis's ineffective assistance of counsel claims and government interference claims requires looking at whether Loftis' counsel's decision not to raise those claims in his initial appeal was ineffective. In order to consider that question, the Court must consider the nature and viability of any claims for appeal.

### III. Discussion

The Court has reviewed Loftis' 79-claim amended motion[1] and its associated exhibits. (Docs. 360, 360-1, 360-2, 360-3, 360-4, and 360-5.) The claims can be loosely grouped into seven categories. First, Loftis contends that his

---

[1] Loftis' amended motion actually contains only 64 grounds for relief. Grounds 24 – 26, 34, 47, 51 -55, 60, 64, 67, 75, and 78 are either missing, "reserved", or listed in conjunction with other claims. Presumably Loftis intends for the Court to refer to his previous submissions, which the Court advised it would not do. (Doc. 357 at 3.)

appointed counsel on his first appeal, who briefed only the sentencing issues, ignored all of Loftis's contentions and wishes and filed his brief limiting the appeal without Loftis' consent. (Doc. 360 at 9 – 10.) Loftis then spends the next 60-plus pages of his motion explaining what the grounds for appeal would have been, if his counsel had filed them. These various grounds of appeal that he would have raised in his initial appeal make up the remaining groups of claims.

The second group of claims relates to prosecutorial misconduct. Loftis asserts that the U.S. attorneys in his trial suborned perjury, used improper evidence, including forged documents, allowed testimony by improper witnesses, and failed to disclose all *Brady/Giglio* material.

The third group of claims alleges ineffective assistance of Loftis' trial counsel. Loftis has labeled many of his substantive grounds "IAC" without further explanation of how he expected his counsel to act. When Loftis is specific about his IAC claims, the claim is directed at failure to object to various evidence and testimony, failure to employ the proper experts, and failure to present certain evidence that Loftis wanted presented.

The fourth group of claims relates to what he characterizes as new evidence.

The fifth group of claims is directed at the conduct of various third-party government actors who were not witnesses at trial. Generally speaking, Loftis characterizes these actions as "government interference," and they include

instances during the several-year investigation of Loftis in which a government investigator somehow affected Loftis' activities or the repercussions of his activities or allegedly caused his business activities to fail.

The sixth group of claims, which overlaps with some of the others, relates only to sentencing, and whether the amount of loss was correctly determined, given the allegedly mitigating effect of the prosecutorial misconduct, governmental interference, perjury, etc.

Loftis' final type of claim is his assertion that he is actually innocent.

### A.    Ineffective Assistance of Counsel

Any claim that Loftis could have brought in his first appeal is barred now, unless the failure for that claim to be raised was a result of ineffective assistance of appellate counsel, or the claim relates to something outside the record and is more appropriately addressed by § 2255. As a preliminary note, it is clear that Loftis' main arguments here are not ineffective assistance of counsel claims at all, but rather, substantive claims that he is trying to make reviewable through the backdoor of his appellate counsel's failure to appeal them originally. Thus, Loftis asserts that his trial counsel was ineffective for various reasons, and then that his appellate counsel knew of these errors, as well as other substantive claims, and failed to appeal them, thereby being ineffective himself.

Loftis's ineffective assistance of counsel claims are governed by *Strickland*

8

*v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Loftis must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Id.* at 697. Nor does the court need not address both prongs of the *Strickland* test if the petitioner's showing is insufficient as to one prong. *Id.* at 697. Conclusory allegations do not prove that counsel was ineffective. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

The Court must apply a strong presumption that counsel's representation fell within the "wide range" of reasonable professional assistance. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). "The defendant bears the burden of overcoming the strong presumption that counsel performed adequately." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).

The overarching questions, then, are whether there were claims arising out of the trial that appellate counsel should have raised but did not, or there were claims that were not ever available on direct appeal and so are raised in this § 2255 for the first time. In order to answer those questions, the Court must review Loftis'

substantive claims regarding his trial.

### B.    Prosecutorial Misconduct

Loftis' motion asserts approximately 28 claims of prosecutorial misconduct at trial and leading up to it, including presenting perjured testimony and falsified documents, and failing to disclose exculpatory evidence. To warrant relief, "prosecutorial misconduct must 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' " *United States v. Ratigan*, 351 F.3d 957, 964 (9th Cir. 2003). The question here is whether appellate counsel's view that any prosecutorial misconduct did not reach this level was deficient performance or caused prejudice to Loftis. To make that assessment, the Court must consider Loftis' substantive claims.

### 1.  Perjured evidence

Loftis claims the prosecution allowed the use in some form of perjured testimony in his Grounds 1 – 3, 8, 10 – 11, 16, 18, 28, 31, 36, 37, 49, 58 - 59, 62, 66, 68 and 69. A prosecutor's knowing use of false evidence to obtain a conviction violates due process.  *See Napue v. Illinois*, 360 U.S. 264 (1959); *Mooney v. Holohan*, 294 U.S. 103 (1935).  (The Ninth Circuit refers to a perjury prosecutorial misconduct claim as a "*Mooney-Napue* claim." *See Morris v. Ylst*, 447 F.3d 735, 743 (9th Cir. 2006).) To show a violation, the defendant must show that the challenged evidence was both material and false, and that the prosecution knew or

10

should have known it was false. *See Napue*, 360 U.S. at 269–71. Materiality is

established if it is reasonably likely the evidence affected the jury's decision. *See*

*id*.; *see also United States v. Young*, 17 F.3d 1201, 1203 (9th Cir. 1994) (quoting

*United States v. Agurs*, 427 U.S. 97, 103 (1976)); *United States v. Endicott*, 869

F.2d 452, 455 (9th Cir. 1989).) As is true of *Strickland* prejudice, a reasonable

likelihood is less than a preponderance of the evidence. *Cf. United States v.*

*Bagley*, 473 U.S. 667, 681–82 (1985). Under the *Mooney-Napue* line of cases, "a

conviction must be set aside whenever there is any reasonable likelihood that the

false testimony could have affected the judgment of the jury." *Reis-Campos v.*

*Biter*, 832 F.3d 968, 976 (9th Cir. 2016).

Loftis' assertions of subornation of perjury fail to meet this standard. Loftis

fails to make a single claim that shows that the government knew or should have

known that someone was presenting perjured testimony. Loftis repeatedly assets

that the prosecution "must have known" or that the conduct "had to be intentional,"

without any support other than Loftis' belief. (*See*, *inter alia*, Doc. 360 at 12, 13,

29, 41, 42.) Many times these assertions of perjury arise from complex factual

scenarios that Loftis contends were insufficiently explained to the jury. Loftis, in

effect, contends that any simplification of the facts or the timeline requires falsity,

and that a jury who heard a simplified version of events would not have convicted

him if it had heard more.

11

Further, the government presented various witnesses who had less than sterling track records in business. For example, Ace Park is an object of great criticism by Loftis throughout his motion. (*See, inter alia,* Grounds 27, 28, 29, 31, 37, etc.) However, Loftis' previous conviction for bankruptcy fraud was raised on direct, and counsel was able to cross examine Park and raise the issues of his credibility and behavior during trial. (Transcr., Doc. 274 at 284 – 285; Doc. 274 at 14 – 17.) Park did not come across at trial as a wholly innocent party. However, he need not be for him to provide evidence of Loftis' criminal acts, as the jury had the opportunity to weigh his credibility.  Based on its review of the documentation provided by Loftis, the Court determines that Loftis has failed to establish a credible allegation that the prosecution suborned perjury related to Parks.

Loftis also contends that the prosecution introduced falsified documents to support its case. Loftis contends that the assignment from Doug Bickerstaff of the Cox 14-8 lease that resulted in the Blackfeet Tribe possessing this lease (which Loftis contends was properly Prism's) was fraudulent. (Doc. 360 at 66.) Loftis bases this assertion on the fact that the assignment occurred after the death of Bickerstaff, reflected in the obituary Loftis submitted in his exhibits. (Doc. 360-5 at 57.) The Court interprets the documents to show that in 2011, Bickerstaff intended to release his claim to the well, which he did by signing the Statement to Accompany Lease on November 4, 2011, (Doc. 360-5 at 48), as explained further

by his son at Doc. 360-5 at 124.  The final assignment was not completed until July

2012. In the place of the signature line in the assignment is a notation that refers to

the document Bickerstaff did in fact sign, months earlier. (Doc. 360-5 at 47.) Loftis

acknowledges this logic himself, and discards it, deciding instead to allege

malfeasance. (Doc. 360 at 60.) The Court is not convinced.

Loftis is particularly detailed and critical about the Blackfeet Nation,

alleging theft, civil rights deprivations, forgery, perjury, and various other bad acts

by a "combined cadre of BLACKFEET INDIANS." (Doc. 360 at 56 (emphasis in

original).) The greatest source of his ire appears to hinge on the testimony at trial

that leases on tribal land could not be conveyed the same way as leases on non-

tribal land, and therefore, Loftis never owned any lease thought he thought he did

and that he went on to sell to others. Loftis considers all testimony related to these

leases and any documentation presented by the Government to be perjurious and

prosecutorial misconduct.

> In order for [Loftis] to succeed on his due process claim, it is not enough
> that the evidence introduced against him was of low probative value or was
> of questionable reliability. Rather, [he] must establish that the evidence was
> so arbitrary that "the factfinder and the adversary system [were] not ...
> competent to uncover, recognize, and take due account of its shortcomings."

*United States v. Berry*, 624 F.3d 1031, 1040 (9th Cir. 2010). Loftis' allegations that

arise out of the questionable business dealings of witnesses, their other illegal

conduct, or other factors, all of which were elicited in testimony either by the

Government or Loftis' counsel, do not amount to valid claims of prosecutorial misconduct. The documents submitted by Loftis do not convince the Court otherwise. Loftis expresses outrage about this supposed forgery and fraudulent evidence, but there is a simple obvious explanation that undermines all of his claims about it. The Court determines that Loftis' other perjury claims suffer from the same infirmity—it serves him to believe others are lying, but he has not established that they were, that their alleged lies had a material effect on his trial, or that the U.S. was aware of them.

### 2. *Brady/Giglio* Evidence

Loftis asserts five claims of prosecutorial failure to disclose exculpatory evidence under *Brady* and *Giglio*. (Doc. 360 at Grounds 10, 11, 19, 21, and 63.) The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *U.S. v. Brady*, 373 U.S. 83, 87 (1967). The duty to disclose is applicable even in the absence of a request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and applies to impeachment evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). There are three components of a *Brady* violation: "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State,

either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 280-82 (1999).

Grounds 10, 19, and 21 deal with one of Loftis' greatest bugbears, the A.S. Gottbetter/Max Case Media deal. Loftis filed a pretrial motion specifically requesting exculpatory information related to Gottbetter. (Doc. 127.) The U.S. objected to the motion, claiming it had already produced what it had, other information was not exculpatory, and it did not intend to call Gottbetter as a witness. But the Court granted the motion, requiring the U.S. to provide a broader scope of discovery than it already had. (Doc. 157.)

Loftis' motion here mainly relates to the identities of six investors in the Gottbetter deal, which Loftis apparently only saw briefly at sentencing. (Doc. 360 at 19.) Ground 19 relates to the government apparently telling shareholders of Max Cash not to write off their shares related to the Prism transaction, after it had fallen apart. Ground 21 relates again to the identities of the unknown investors. Loftis contends that there is somehow some exculpatory evidence related to these discussions and individuals. (Doc. 360 at 26-27.) Loftis does not connect the dots between how the lack of these identities prejudiced him. He contends that he should have been able to produce evidence that they were made whole, but that information would not have undermined his conviction; a repeated logical error committed by Loftis is to believe that his fraudulent acts were somehow forgiven

or expiated by the bad acts or failure to suffer of others. Though Loftis points to many documents that were produced in discovery and surmises there are more, he fails to allege a credible *Brady* violation claim.

Ground 11 relates to an email the U.S. produced in which AUSA Chad Spraker tells a person named Jeff Montgomery not to email Spraker anything that Montgomery does not want to end up in the hands of the defense. (Doc. 360 at 20.) Montgomery did not testify at trial. Loftis had concluded that this instruction was somehow improper, but he cannot explain why. He implies that there must be some *Brady* evidence that has been disclosed verbally but not in emails, but that assumption is insufficient to state a credible ground.

Ground 63 relates to the Doug Bickerstaff assignment explained above. Again, Loftis does not identify what information he believes he should have or how it would exculpate him. Loftis has failed to establish that the Government should have turned over something to them that it did not.

C.      Governmental Interference

Loftis asserts multiple claims of governmental interference, in which he asserts that federal governmental officials, especially FBI agent Rice, and Blackfeet Nation and BIA officials, improperly affected the chain of events related to his conduct and arrest. Loftis frequently asserts that government meddling scuppered his various deals or made his behavior look worse than it really was by

16

preventing other parties from exercising their remedies. Ground 7 is interference in the foreclosure of the Max Cash loans. Ground 8 is ruination of the Weyerhauser deal by government contact. Ground 4 alleges both. Grounds 49 – 55 allege governmental misconduct on the part of the Blackfeet Nation, the Bureau of Indian Affairs, and the Bureau of Land Management. (Doc. 360 at 40.) Loftis alleges that these three entities, in addition to other persons, illegal stole his property, clouded titles, "pirate[d] the production revenues," etc. The claims all suffer from the same problem: Loftis has no credible evidence to support these allegations to the point that they merit response, and for those acts that he can prove, the truth of the government's involvement would not have made a difference to his conviction. Maybe Weyerhauser would have entered into a lucrative deal with him had it not learned that he was under federal investigation, but a lucrative deal would not have erased his other criminal conduct that was presented to the jury. Loftis has not credibly alleged any kind of governmental misconduct claim.

     **D.**    **Claims that could not have been raised on direct appeal**

       1.  New Evidence

Loftis refers to new evidence in Grounds 5, 17, 18, and 21. "Short of proof of actual innocence, claims solely based on new evidence are generally not cognizable on habeas. *See Conley v. United States,* 323 F.3d 7, 14 (1st Cir.2003) (en banc) ("Merely to claim that new evidence casts doubt, even grave doubt, on

the correctness of a conviction is not a ground for relief on collateral attack.").”
*United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).

The new evidence identified by Loftis relates to what he learned from Tydus
Richards' testimony about not foreclosing on the Prism assets after the Gottbetter
deal fell apart, (Doc. 360 at 15 and 24), evidence related to Agent Rice contacting
Weyerhauser to meddle in that deal, (*Id.* at 23), and the "SUPER SECRET
SEALED INVESTOR RECORDS," (*Id.* at 26, emphasis in original), seen at re-
sentencing. "[A] motion under § 2255 must be based upon an independent
constitutional violation. *See Herrera v. Collins,* 506 U.S. 390, 400, 113 S. Ct. 853,
122 L.Ed.2d 203 (1993) ("[N]ewly discovered evidence ... alleged in a habeas
application ... must bear upon the constitutionality of the applicant's detention; *the
existence merely of newly discovered evidence relevant to the guilt of a state
prisoner is not a ground for relief on federal habeas corpus.*" *United States v.
Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). The proper device for such a claim is
Federal Rule of Criminal Procedure 33, which allows a prisoner to move for a new
trial based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). Loftis already
unsuccessfully moved for a new trial on other grounds. (Doc. 212.)

To qualify for a new trial, Loftis must establish: "(1) the evidence is newly
discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence
is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely

impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial." *United States v. Berry*, 624 F.3d 1031, 1042 (9th Cir. 2010).

Under this standard, and for the reasons explained above about the meaning of these various pieces of "new evidence," Loftis is not entitled to a new trial. The introduction of all of these facts at trial would not have resulted in his acquittal. Further, Loftis' appellate counsel was not ineffective for failure to raise these points on appeal.

2.    Actual Innocence

Finally, Loftis claims that all of the errors and misconduct he alleges amounts to a case that he is actually innocent of the charges against him. (Doc. 360 at 71 – 73.) To establish actual innocence, Loftis must demonstrate that, in light of all the evidence, including new evidence that might be introduced by the prosecution, "it is more likely than not that no reasonable juror would have convicted him." *United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003). After review of all of the record in this case, the evidence produced by Loftis in support of his motion, and his new arguments, the Court is convinced that reasonable jurors would still convict him.

E.    **Ineffectiveness of Trial Counsel Claim**

Much of Loftis' motion is devoted to his ineffective assistance counsel claims against his counsel in the district court. Most of these claims are merely vehicles to raise the underlying substantive claim, i.e., Loftis' main interest is alleging governmental interference, so he also alleges ineffective assistance of trial counsel in failing to raise the issue. To the extent the underlying claims have already been addressed, the piggybacking counsel claims also fail. Loftis' specific counsel claims include failure to object to witnesses and evidence, the failure to retain the various experts that Loftis preferred, and failure to introduce specific evidence requested by Loftis. (Grounds 12, 13, 14, 15, 19, 20, 22, 23, 31, 32, 33, 35, 48, 49, 61, 66, 76, and 79.) (This list does not include claims that include the term "IAC" but are fundamentally claims regarding other conduct.)

A few preliminary notes are warranted regarding the overarching themes of Loftis' claims. Many of these claims assert flaws in his conviction related to the fact that various witnesses or related individuals were dishonest or even criminal actors themselves, and counsel failed to object properly or to introduce further impeachment evidence, or otherwise tolerated improper testimony or evidence. Loftis makes these allegations against Schofield, Portell, Richards, Hunter, Gottbetter, Park, Villone, the Blackfeet Nation, Robert Gross, Ramona Hall, Barney Whiteman, and more. The Court is not persuaded by any of the aspersions cast on these witnesses, because their bad behavior, criminal convictions, etc.,

were all raised at trial. The testimony was clear that there were a lot of people trying to pull the wool over each other's eyes, or worse. Loftis' misapprehension is to think that another person's bad or even criminal behavior somehow excuses his own. The jury could—and did—convict him for his crimes without needing to determine whether anyone else had or had not committed crimes themselves. As a result, trial counsel's failure to do more or differently in terms of discrediting these individuals was not ineffective.

A second pervasive theme to Loftis' ineffectiveness claims is that the oil and gas business is too complicated for the Court, the jury, and even his own counsel, and therefore, counsel should have hired other experts, more experts, and different experts. Loftis vastly overstates this issue, and uses it to excuse very basic criminal behavior. A juror does not need to understand the nuances of geology to understand the principal that one cannot honestly attempt to sell something one does not own. There were moments toward the beginning of the trial when some terms would either have been new to the jury or not thoroughly explained, but after repeated witnesses addressing the same issues over and over, and additional clarification by the Court as well as both sets of counsel, the relevant terms of art had been sufficiently explained to the jury that the Court sees no reason to believe they did not understand. The jurors were attentive and dedicated, and the Court has no doubt that if any of the terms defined in the jury instructions or throughout the

trial were opaque, the jurors would have asked. Further, the exact difference between, say, a working interest and a royalty payment, is not integral to understanding the nature of Loftis' offense conduct.

The Court exercises "a heavy measure of deference to counsel's judgments" when scrutinizing counsel's performance. *Strickland*, 466 U.S. at 691. But see *United States v. Span*, 75 F.3d 1383, 1389 (9th Cir. 1996) (label of "trial strategy" does not automatically immunize attorney's performance from Sixth Amendment challenges). The Ninth Circuit has characterized counsel's choice whether to call available witnesses as "a strategic decision." *Hall v. Lewis*, 99 Fed. Appx. 829, 831 (9th Cir. 2004); *see also Denham v. Deeds*, 954 F.2d 1501, 1505 (9th Cir. 1992). Counsel's decision to focus on impeachment through cross-examination or presentation of defense evidence—or both—represents a tactical decision "reflecting [their] skill and judgment." *Denham*, 954 F.2d at 1505.

As the undersigned stated at Loftis' sentencing and continues to believe based on the extensive record here, "[Mr. Loftis] had remarkable representation during that trial: Mr. McFarland, Mr. Sherwood. Mr. McFarland, in particular, turned over every rock, cross-examined every witness, and presented every possible piece of evidence, in my opinion." (Transcr. Doc. 280 at 183.) Nevertheless, Loftis' motion includes dozens of claims of ineffective assistance, so the Court must consider whether the cumulative error doctrine applies. Cumulative

22

error exists where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). However, where no constitutional error exists, there is nothing to accumulate to a level of a constitutional violation. *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000). The Court concludes that trial counsel's choice to present certain evidence, not to object to other evidence, to present the experts they chose and not others, and to file the motions they chose to file, were all part of an adequate and thorough professional performance. Because Loftis has not stated or established any claim that his counsel provided ineffective assistance, Loftis similarly fails to show a cumulative constitutional violation.

## F. Appellate Counsel

At long last, we return to the ultimate question, whether Loftis' original appellate counsel was ineffective by raising only the sentencing issue, and thereby waiving all of the substantive issues above. Counsel did succeed in reducing Loftis' sentence by 15 months. If he was ineffective, it was because there were other viable claims that would have resulted in Loftis' acquittal.

Ineffectiveness of counsel on appeal invokes the same *Strickland* standard previously discussed in this Order. *See, e.g., Cockett v. Ray*, 333 F.3d 938, 943 (9th

Cir. 2003) (quoting *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989) ). Loftis must accordingly show that his appellate counsel's performance fell below an objective standard of reasonableness and prejudice through "a reasonable probability that, but for counsel's unprofessional errors, [Petitioner] would have prevailed on appeal." *See Cockett*, 333 F.3d at 944.

Appellate counsel is not obligated to raise every nonfrivolous issue requested by an appellant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Loftis was clearly disturbed by appellate counsel's failure to raise all of the claims that Loftis sent him in over 20 letters. (Doc. 360 at 9 - 10.) However, the Supreme Court has recognized "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Id.*, 463 U.S. at 751-52. Appellate counsel did so; Loftis' approach on his § 2255 motion here shows that is not his style.

As to Loftis' substantive claims, such as prosecutorial misconduct, governmental interference, etc., the record does not support those claims. As such, Loftis cannot find the prejudice that would be required to sustain an ineffective assistance of appellate counsel claim. As to appellate counsel's failure to raise trial counsel's ineffectiveness, ineffective assistance of counsel claims are generally inappropriate on direct appeal, because they may require the development of factual issues not available on the appellate record. *United States v. Ross*, 206 F.3d

24

896, 900 (9th Cir. 2000). Such claims are only reviewed on direct appeal: (1)

"when the record on appeal is sufficiently developed to permit review and

determination of the issue," or (2) "when the legal representation is so inadequate

that it obviously denies a defendant his Sixth Amendment right to counsel." *Id.*

Neither of these exceptions apply here. Appellate counsel was not obliged to raise

trial counsel ineffective assistance of counsel on his initial direct appeal.

## IV.  Conclusion

Following a thorough review of the record in this case and Loftis'

voluminous motion and exhibits, the Court is firmly convinced that trial counsel

and appellate counsel were not ineffective; Loftis had no viable claims on appeal

that relate to a constitutional error in this Court or that show a reasonable juror

would not have convicted him.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El v.*

25

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court does not believe jurists of reason could disagree with this Order.

Accordingly, IT IS ORDERED:

1.  Loftis' motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 360) is DENIED.

2.  A certificate of appealability is DENIED.

3.  The clerk shall ensure that all pending motions in this case and in CV 22-21-BU-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Loftis.

DATED this 22nd day of February, 2023.

Dana L. Christensen, District Judge
United States District Court

26